IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**DEL MAGUEY, LTD., CO.,**

    Plaintiff,

    v.                                                                 Civ. No. 09-1106 BB/LFG

**ANSLEY J. COALE, JR., CRAFT DISTILLERS,
DISTILLERS ART, INC., ALAMBIC, INC.,
DESTILERIA LOS DANZANTES, and Does 1 through
10, inclusive,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of a motion to dismiss filed by Defendants Ansley Coale, Craft Distillers, Alambic, Inc., and Distillers Art, Inc. ("Coale Defendants"). [Doc. 11] Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion to dismiss should be converted to a motion for summary judgment and should be granted in part and denied in part.

    **Summary of Relevant Allegations**

Plaintiff alleges it entered into a contract with a Mexican business entity, Defendant Destileria Los Danzantes ("DLD"). The purpose of the contract was to appoint Plaintiff as the exclusive importer of a brand of mezcal, an alcoholic beverage, distilled by DLD. Plaintiff also alleges it entered into a contract with DLD and the Coale Defendants under which the Coale Defendants would market the mezcal in California and elsewhere in the United States, once the mezcal was imported into this country by Plaintiff. Finally, Plaintiff alleges the Coale Defendants tortiously induced DLD to breach its contract with Plaintiff; breached their own contract with Plaintiff; violated New Mexico's version of the Uniform Trade Secrets Act; and

breached a non-disclosure agreement they had entered into with Plaintiff. The Coale Defendants have moved to dismiss all claims raised by Plaintiff against them.

**Standard of Review**

In response to the motion to dismiss, Plaintiff has submitted a number of documentary exhibits for this Court's consideration. The Court has reviewed those exhibits and this opinion is based in part on the contents of the exhibits. Therefore, the Court is required to convert the motion to dismiss to a motion for summary judgment and review the submissions of the parties under a summary-judgment standard rather than a Rule 12(b)(6) standard. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007). Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Discussion**

**Tortious Interference With Contractual Relations:** Plaintiff's allegations as to this claim are that Plaintiff and DLD entered into a contract under which Plaintiff was the sole importer of DLD's mezcal into the United States; that Plaintiff introduced the Coale Defendants

to DLD in furtherance of a business arrangement under which Plaintiff would import the mezcal and the Coale Defendants would then market it; and that instead of proceeding with this arrangement, the Coale Defendants induced DLD to bypass Plaintiff and allow the Coale Defendants to directly import the mezcal themselves, cutting Plaintiff out of the deal.  In New Mexico the elements of a claim for intentional interference with contract are as follows:  (1) defendants had knowledge of the contract; (2) the contract was breached; (3) defendants played an active and substantial role in causing the breach; (4) plaintiff suffered damages as a result of the breach; and (5) defendants induced the breach without justification or privilege.  *See Martin v. Franklin Capital Corp.*, 195 P.3d 24, 27 (N.M. App. 2008).

The Coale Defendants' motion attacks only one of these elements:  they maintain there was no breach of the contract between DLD and Plaintiff, and without such a breach there can be no tortious interference with the contract.  Their argument is based on their contention that the alleged contract at issue covered only one brand of mezcal, called Los Danzantes.  They point out that the brand of mezcal they are importing directly from DLD is called Los Nahuales, not Los Danzantes, and contend that DLD was not required by contract to use Plaintiff as the sole importer for this new and different brand of mezcal.  This argument, however, ignores significant allegations in the complaint and evidence submitted by Plaintiff.[1]  Plaintiff's side of the story is that the parties agreed to import and market Los Danzantes mezcal under their tripartite arrangement, but were unable to obtain a trademark for such a brand.  According to Plaintiff, the parties had contemplated such a possibility and agreed that if such a failure occurred, the parties

---

[1]The Court notes the complaint filed in this case was verified.  Therefore, the allegations in the complaint may be treated as an affidavit for summary-judgment purposes, although those allegations are subject to the same requirements as an ordinary affidavit -- for example, they must be based on personal knowledge and not be merely conclusory statements.  *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002).  For purposes of this opinion, the Court has considered only the allegations that meet the necessary requirements.

would obtain a different trademark and import and market the mezcal under that new name. This new name, according to Plaintiff, was Los Nahuales. In other words, Plaintiff alleges the parties agreed to transfer each parties' rights under the Los Danzantes contracts to the new Los Nahuales brand, once that brand was trademarked instead of Los Danzantes.[2]

This aspect of Plaintiff's allegations is what distinguishes Plaintiff's case from the authorities discussed by the Coale Defendants in their brief. They rely heavily on a district court case from New York, *Subaru Distributors Corp. v. Subaru of America, Inc.*, 2004 WL 3220120 (S.D. N.Y. unpublished). In *Subaru*, the manufacturer of Subaru-brand cars agreed to grant exclusive distribution rights to the plaintiff, to distribute Subaru-brand vehicles in a certain territory. The manufacturer then allegedly manufactured a number of vehicles and, after slight modification, branded them as Saab vehicles and sold them to Saab dealers operating within the plaintiff's exclusive territory. The district court held in essence that Saab vehicles are not Subaru vehicles, so the exclusive distribution rights did not encompass the Saab vehicles. In the *Subaru* case, as in the other cases cited by the Coale Defendants, there was no agreement that the plaintiff's exclusive distribution rights would be transferred to a different brand such as Saab. In our case, on the other hand, as discussed above, there are allegations and evidence that such a transfer of rights was agreed upon by the parties. There are also allegations and evidence that DLD completely ceased exporting Los Danzantes mezcal and began exporting Los Nahuales through the Coale Defendants rather than Plaintiff. [Complaint, Exhs. 11, 12, 13] These

---

[2]Plaintiff's allegations are supported by the documentary evidence attached to the response brief. Exhibit 1 to the response brief contains a discussion of the trademark difficulties presented by the Los Danzantes trademark; Exhibit 2 contains evidence that DLD asked the Coale Defendants to apply for a Los Nahuales trademark as a replacement for Los Danzantes, with the word "danzantes" to remain on the label; and Exhibit 3 is a draft marketing agreement between DLD and the Coale Defendants. This agreement recognizes Plaintiff as the exclusive importer of Los Danzantes mezcal, and states that if a trademark cannot be obtained for "Los Danzantes" then a new trademark should be sought.

allegations and evidence distinguish this case from cases such as *Subaru*. The Court has no doubt the result in *Subaru* would have been different if, as is alleged in this case, the parties had contemplated the possibility that the brand "Subaru" could not be trademarked, and if so that a different brand name would be substituted as the subject of the parties' agreements. Plaintiff has adequately alleged that DLD breached its contract with Plaintiff, and that the breach was induced by the Coale Defendants. Therefore, the motion to dismiss the tortious-interference-with-contract claim will be denied.

**Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing:** Plaintiff has alleged that the Coale Defendants entered into a non-disclosure agreement ("NDA") with Plaintiff prior to entering into business discussions with Plaintiff. Plaintiff also alleges the Coale Defendants breached the NDA by obtaining proprietary information from Plaintiff and then using that information to Plaintiff's detriment. In addition to the straightforward breach-of-contract claim, Plaintiff also raises a claim for breach of the implied covenant of good faith and fair dealing that is implicit in contracts in New Mexico.[3] The Coale Defendants raise two different arguments with respect to these claims. First, they maintain Plaintiff has no rights to the Los Nahuales brand and therefore cannot claim it suffered harm as a result of the Coale Defendants' transactions with respect to that brand. This contention has already been rejected above; Plaintiff has raised issues of fact as to whether it has any rights arising out of the use of the Los Nahuales brand.

---

[3]The Court has combined its discussion of the breach-of-contract claim with the breach-of-covenant-of-good-faith-and-fair-dealing claim because in the context of this case, the latter is simply an alternative version of the former. *See, e.g., Heimann v. Kinder-Morgan CO2 Co., L.P.*, 144 P.3d 111, 117 (N.M. App. 2006) (claim of breach of good faith and fair dealing sounds in contract, at least when no "special relationship" exists such as that between an insured and insurer).

The Coale Defendants also claim that Plaintiff's allegations supporting these claims are conclusory and do not state a cause of action.  They point to the general allegations in paragraphs 77 to 82 of the complaint, to the effect that the Coale Defendants obtained proprietary information and trade secrets and then used that information "in derogation of Del Maguey's rights."  The Coale Defendants maintain these allegations are inordinately vague and lack necessary specificity.  Again, however, the Coale Defendants ignore exhibits that have been incorporated into the complaint by attachment, allegations in the complaint in paragraphs other than 77 to 82, and the exhibits attached to Plaintiff's response brief.  All of this information, taken as a whole, is sufficient to state a claim that the Coale Defendants obtained proprietary information from Plaintiff after signing the NDA, and then used that information to aid their effort to bypass Plaintiff and deal directly with DLD.[4]  It is possible this claim will not survive a motion for summary judgment if Plaintiff did not in fact provide any proprietary information or trade secrets to the Coale Defendants.  However, Plaintiff has sufficiently alleged a cause of action for breach of the NDA and accompanying damages, and is entitled to perform discovery in an attempt to prove that cause of action.

**Uniform Trade Secrets Act:**  This cause of action is similar to the contract claims.  Plaintiff alleges the Coale Defendants violated New Mexico's version of the Uniform Trade Secrets Act, NMSA Sections 57-3A-1 to -7 ("the Act").  The Coale Defendants allegedly did so by misappropriating Plaintiff's trade secrets and using them to Plaintiff's detriment.  As with the contract claims, the Coale Defendants contend Plaintiff's allegations are too conclusory, in that

---

[4]As just one example, the Court notes the NDA refers to "pricing structure" as proprietary information that will be disclosed to the Coale Defendants.  The wholesale prices to be paid to DLD, as well as the retail prices to be charged to customers, feature prominently in certain documents submitted by Plaintiff.  [Complaint, Exhs. 7, 8, 10]  An issue of fact therefore arises as to whether the "pricing structure" disclosed by Plaintiff was used by the Coale Defendants in their separate negotiations with DLD.

they do not identify what "trade secrets" Plaintiff is referring to, or explain how the secrets were misappropriated, or how they were used to Plaintiff's detriment. The Court again points out that the Coale Defendants are ignoring all of the documentary evidence attached to Plaintiff's complaint and response brief, as well as the totality of the factual allegations made in the verified complaint. In New Mexico, trade secrets protected by the Act include information that derives independent economic value, either actual or potential, from not being generally known or readily ascertainable by third parties. NMSA § 57-3A-2(D)(1). Plaintiff relies heavily on the fact that it introduced DLD, its supplier, to the Coale Defendants; those Defendants in response argue that a business introduction does not constitute a trade secret. In the right circumstances, however, the identity of a company's supplier can be considered a trade secret. *See, e.g., Seiko Epson Corp. v. Abacus 24-7 LLC*, 2010 WL 125968 (D. Or. unpublished) (depending on facts, the identity of plaintiff's supplier could constitute a trade secret). The Court notes also that information such as pricing structure or price lists, or in limited circumstances customer lists, can be considered trade secrets for purposes of the Uniform Trade Secrets Act. *See, e.g., id.* (price list can be trade secret if reasonable efforts taken to keep it secret); *Bijan Designer for Men, Inc. v. Katzman*, 1997 WL 65717 (S.D. N.Y. 1997) (customer list should be considered confidential trade secret if it was developed through substantial effort, was kept in confidence, and contains information not readily ascertainable to third parties). Taken as a whole, Plaintiff's submissions state a claim for violation of the Act sufficient to entitle Plaintiff to perform discovery and attempt to further develop the claim factually.[5] Should Plaintiff fail to elicit facts showing that

---

[5]The Court does note that Plaintiff's response brief was quite general as to this claim as well as the contract claims, which forced the Court to carefully review the materials submitted to identify specific areas of information that might be considered trade secrets. It should have been Plaintiff's job to be more specific both in the pleading and in the briefing, and the Court undertook this careful review only because it is the Court's responsibility to ensure that meritorious claims are not dismissed prior to discovery simply because of procedural shortcomings on the part of a plaintiff. *Cf. Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir.2002)

specific trade-secret-eligible information was obtained by the Coale Defendants and used in violation of the Act, this claim will not survive summary judgment. *See, e.g., IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (district court rightly granted summary judgment on trade-secrets claim where claimed trade secrets were vague and over-inclusive).

**Temporary and Permanent Injunction:** Plaintiff's complaint includes a separate claim for temporary and permanent injunctive relief. The Coale Defendants request dismissal of this claim because these "claims" are in actuality forms of relief, and are not considered causes of action. This argument is correct. *See Heimann v. Kinder-Morgan CO2 Co., L.P.*, *supra*, 144 P.3d at 118 (an injunction is a remedy only and does not constitute an independent claim). Plaintiff's claim for injunctive relief will be dismissed as a separate, independent claim and instead will be considered a type of relief sought in connection with Plaintiff's other causes of action.[6]

**Conclusion**

Pursuant to the foregoing, the motion to dismiss will be denied except with respect to Plaintiff's separate count requesting injunction relief.

---

(even where party violates a local rule by failing to file a response to a summary judgment motion, court may not enter summary judgment on that basis alone, but must review the materials submitted to ensure movant has established a right to summary judgment).

[6]The Coale Defendants have also attacked the validity and scope of Plaintiff's request for injunctive relief. It would be premature for the Court to rule on this question at this point in the proceedings. Instead, the Court will wait until the facts and law have been appropriately developed by the parties. The Court notes it is Plaintiff's responsibility to adequately pursue any immediate injunctive relief that might be sought prior to trial. Simply including a claim for temporary injunction in a complaint is not enough to trigger the Court to act; instead, it is incumbent on Plaintiff to file a motion, supported by facts and law, requesting such immediate relief.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motion to dismiss filed by the Coale Defendants (Doc. 11) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 15th day of April, 2008.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE